IN THE UNITED STATES DISTRICT
FOR THE DISTRICT OF DELAWARE

PETTINARO ENTERPRISES, LLC; :
VERINO AND KATHRYN PETTINARO; :
and STAR BUILDING, LLC, :
 :
   Plaintiffs, :
 :
  v. :
 : C.A. No. 09-139 UNA
CONTINENTAL CASUALTY :
COMPANY, : JURY TRIAL DEMANDED
 :
   Defendant. :

## ANSWER AND AFFIRMATIVE DEFENSES OF CONTINENTAL CASUALTY COMPANY

Defendant, Continental Casualty Company (hereinafter "Continental") by and through its counsel, Cozen O'Connor, hereby answers the Complaint of Pettinaro Enterprises, LLC, Verino and Kathryn Pettinaro, and Star Building, LLC as follows:

## NATURE OF THE ACTION

1. Admitted in part. Continental admits that the action instituted by plaintiffs is an action for alleged breach of contract and declaratory judgment. By way of further answer, building owner, Verino Pettinaro, filed a Sworn Statement in Proof of Loss with Continental requesting insurance coverage for a fire which occurred on April 16, 2007 in the amount of $3,611,225.50. No claim was made by Pettinaro Enterprises, LLC, Star Building, LLC or Kathryn Pettinaro. A full and complete copy of the policy of insurance is attached hereto, incorporated herewith and marked as Exhibit "A."

## PARTIES AND JURISDICTION

2. Admitted. By way of further answer, Pettinaro Enterprises, LLC is a Delaware limited liability company organized under the laws of the State of Delaware. Star Building, LLC is a limited liability company organized under the laws of the State of Delaware. Pettinaro

Enterprises, LLC, Star Building, LLC and Verino and Kathryn Pettinaro are all citizens of the State of Delaware.  The members of Pettinaro Enterprises, LLC are:  Verino Pettinaro, who resides at 3311 Breidablink Drive, Wilmington, Delaware; Gregory Pettinaro, who resides at 1 Summit Lane, Montchanin, Delaware; Cindy Wilkinson, who resides at 706 Princeton Road, Wilmington, Delaware; and Vicky Pettinaro, who resides at 338 Camac Street, Philadelphia, Pennsylvania; the members of Star Building, LLC are the same members as Pettinaro Enterprises, LLC. All plaintiffs are thus citizens of a state other than Illinois.

3.     Admitted in part.  By way of further answer, Continental Casualty Company is an Illinois corporation having its principal place of business at 333 South Wabash Avenue, Chicago, Illinois  60604.  Continental is thus a citizen of the State of Illinois.  Jurisdiction is based upon diversity of citizenship under 28 U.S.C. 1332, 1441 and 1446.

## FACTS

4.     Admitted.

5.     Admitted in part; denied in part.  Continental admits that the fire occurred in the early morning hours of April 16, 2007.  Defendant denies that a fire occurred on April 15, 2007.

6.     Admitted in part; denied in part.  Continental admits that it received notice of loss. By way of further answer, Continental denies that all plaintiffs provided Continental with information or documents, since only Verino Pettinaro filed Proof of Loss with Continental.  By way of still further answer, Continental denies that a covered loss occurred under its policy of insurance, and denies that Pettinaro Enterprises, LLC, Star Building, LLC or Kathryn Pettinaro have any interest in the insurance policy proceeds under which the claim was made and suit instituted.

7.     Admitted in part; denied in part.   Continental admits that documents and information were provided to it pursuant to the terms and conditions of the policy of insurance.

2

By way of further answer, Continental denies that it secured deposition testimony. To the contrary, Continental engaged in examinations under oath of various individuals pursuant to the policy of insurance. By way of still further answer, Continental denies that any covered loss occurred.

8.    Admitted in part; denied in part. Continental admits that it denied coverage. By way of further answer, Continental denies that it refused to honor any obligation, or that it had any obligation, to make any payment under the policy of insurance.

9.    Admitted.

10.    Admitted.

11.    Continental admits that the provisions quoted in this paragraph are contained in the policy of insurance. By way of further answer, Continental avers that the policy of insurance, being in writing, speaks for itself concerning its grant of coverage, limitations, exclusions, and other provisions, as hereinafter referred to in its Affirmative Defenses.

12.    Continental admits that the provision quoted in this paragraph is contained in the policy of insurance. By way of further response, the policy of insurance, being in writing, speaks for itself.

13.    Admitted in part; denied in part. Continental admits that Pettinaro Enterprises, LLC and Verino and Kathryn Pettinaro were insured parties under the policy of insurance. Continental denies that Star Building, LLC was an insured party on April 16, 2007, or thereafter. By way of further answer, only Verino Pettinaro filed a Sworn Statement in Proof of Loss under the policy, as building owner, and therefore Pettinaro Enterprises, LLC and Star Building, LLC and Kathryn Pettinaro have no interest in any policy proceeds under the policy, as more fully articulated hereinafter in its Affirmative Defenses.

## COUNT I

### BREACH OF CONTRACT

14.     Continental incorporates by reference, as if fully set forth at length, all of its prior and subsequent averments hereinafter stated.

15.     Admitted in part; denied in part.  Continental admits that it would have an obligation to pay for any covered loss.  By way of further answer, Continental denies that the fire that occurred on April 16, 2007 at the Star Building was a covered loss for reasons as more fully articulated hereinafter in its Affirmative Defenses.

16.     Denied.

17.     Admitted in part; denied in part.  Continental admits that it has refused to make payment to claimant Verino Pettinaro.  By way of further answer, Continental denies that it breached any obligation to make payment for damages sustained in the fire.

18.     Denied.

19.     Denied.

## COUNT II

### DECLARATORY JUDGMENT

20.     Continental incorporates by reference as if fully set forth at length, all of its prior averments, and subsequent averments hereinafter stated.

21.     Continental admits that plaintiffs seek a declaratory judgment and that an actual controversy between an insured, Verino Pettinaro, and Continental exists.

22.     Admitted in part; denied in part.  Continental admits that it has not made payment to an insured under its policy as a result of the April 16, 2007 fire to the building known as the Star Building.  By way of further answer, defendant Continental denies that it has any obligation under its policy to make any payment as a result of the fire.

4

23.     Admitted in part; denied in part. Continental admits that it has denied coverage to an insured under its policy of insurance by virtue of the April 16, 2007 fire. By way of further answer, Continental denies that a declaratory judgment is necessary to resolve the dispute between the parties since plaintiff has alleged a breach of contract.

### PRAYER FOR RELIEF

WHEREFORE, Continental respectfully requests that the court dismiss plaintiffs' Complaint, and enter a judgment on its behalf, and award Continental attorney fees, disbursements, and expenses in its defense of this lawsuit, and any other relief the court determines to be just and proper.

### AFFIRMATIVE DEFENSES

24.     Continental incorporates by reference, as if fully set forth at length, all of its prior averments and hereby incorporates any and all subsequent averments as if fully set forth at length herein.

### FIRST AFFIRMATIVE DEFENSE

25.     The policy of insurance, upon which claim was made and suit instituted, contains, *inter alia*, the following provision:

> **11.    VACANCY**
>
> **a.    Description of Terms**
>
> (1)    As used in this Vacancy Condition, the term building and the term vacant have the meanings set forth in **(1)(a)** and **(1)(b)** below:
>
> (a)    When this policy is issued to a tenant, and with respect to that tenant's interest in Covered Property, building means the unit or suite rented or leased to the tenant. Such building is vacant when it does not contain enough business personal property to conduct customary operations.

    (b)    When this policy is issued to the owner or general lessee of a building, building means the entire building.  Such building is vacant unless at least 31 % of its total square footage is:

        (i)    Rented to a lessee or sub-lessee and used by the lessee or sub-lessee to conduct its customary operations; and/or

        (ii)    Used by the building owner to conduct customary operations.

    (2)    Buildings under construction or renovation are not considered vacant.

**b.**    **Vacancy Provisions**

If the building where loss or damage occurs has been vacant for more than 60 consecutive days before that loss or damage occurs:

    (1)    We will not pay for any loss or damage caused by any of the following even if they are Covered Causes of Loss:

        (a)    Vandalism or arson;

        (b)    Sprinkler leakage, unless you have protected the system against freezing;

        (c)    Building glass breakage;

        (d)    Water damage;

        (e)    Theft; or

        (f)    Attempted theft.

    (2)    With respect to Covered Causes of Loss other than those listed in **b.(1)(a)** through **b.(1)(f)** above, we will reduce the amount we would otherwise pay for the loss or damage by 15%.

26.    In or around 1999, Verino Pettinaro, as landlord, leased the property to an entity entitled VIP Storage.  After the owner of VIP Storage, Mr. Kozubal was killed, a new lease was executed to a entity entitled VIP Storage of Delaware, Inc. run by Jeffrey Lynn (hereinafter "VIP").

27.     After various extensions of the lease, via amendments, the sixth amendment of the lease stated that the lease would terminate on March 31, 2004.  Thereafter, VIP continued to occupy the property.

28.     Verino Pettinaro, and/or other individuals or entities connected with Pettinaro Enterprises, LLC, desired to develop the property.

29.     On May 6, 2005, the only two remaining tenants occupying the Star Building, Tirec and VIP were notified that their leases were terminated and they had to vacate the building. See, Exhibits "B" and "C."

30.     On June 6 and 28, 2005, Pettinaro confirmed that the property would be and had been vacated but that VIP could not move out all stored material.  See Exhibits "D" and "E."

31.     Thereafter, no representatives of Tirec or VIP occupied the structure, and since there were no further lessees and the building was not used for any such customary operations, it was vacant as defined in the policy.  See Exhibit "F."

32.     VIP was alleged to owe its landlord in excess of $124,000, which debt was written off by Pettinaro's counsel.  In or around July, 2005, plaintiff ceased maintaining the automatic sprinkler system at the premises, and it became inoperable.  Further, roof leaks and wall leaks, existed, which had led to a rent reduction for VIP.  Similarly, water and electric service to the building ceased.  The building, over a two-year period of time leading to the fire, continued to contain miscellaneous debris, combustibles, including cardboard boxes, old furniture, and other debris which remained from the prior occupancy of VIP.

33.     Plaintiffs did not seek or receive, from the Fire Marshal's office in the City of Wilmington, an impairment permit authorizing a non-operational sprinkler system for a short period of time, in order for repairs to be made.  Additionally, the building, according to plaintiff,

became a location where trespassers, vandals, and other transients broke into. Plaintiffs made no reports to police concerning these occurrences.

34. On April 12, as indicated in Plaintiffs' Complaint, a fire occurred at the building. Plaintiffs were directed by the Wilmington, Delaware Fire Marshal's office, to seal up all openings between the first and second floor; remove all combustibles; board up entryways into the building; apply for an impairment permit immediately, in order to repair the sprinkler system. See Exhibit "G."

35. On April 12, 2007, plaintiffs, through its safety officer, advised the Wilmington Fire Marshal's office that the building was unsafe for human beings, and that it would not dispatch its employees to clean up combustibles at the premises. See Exhibit "H."

36. On Sunday, April 15, 2007, Gregory Pettinaro, CEO of Pettinaro Enterprises, LLC and Pettinaro Construction Company, visited the Star Building and drove around the building. He observed that the building was not secured, since plywood which had secured a broken rear door was ripped off and no longer blocked entry into the building. Nevertheless, he entered the building, in search for chain link fencing to remove to another property. He spent approximately twenty minutes in the building after which time he exited. He did not call the Fire Department, nor Police Department, to report the vandalism/damage to the building.

37. At approximately 5:30 a.m. on Monday, April 16, 2007, an arson fire occurred inside the Star Building causing damage to same. The fire has been classified by the Delaware Fire Marshal's office as incendiary. See Exhibit "I." Continental's privately retained origin and cause investigator has also concluded that the fire was incendiary.

38. Since the fire of April 16, 2007 was an incendiary or arson fire, and since the property was vacant and not used by its owner for customary operations for at least two years

prior to the fire, there is no coverage to be afforded to any insured by virtue of the policy provisions referred to in paragraph 25 above, precluding loss caused by vandalism or arson.

## SECOND AFFIRMATIVE DEFENSE

39.     Continental incorporates by reference, as if fully set forth at length, the previous averments, as well as any subsequent averments hereinafter stated.

40.     The policy of insurance contains, *inter alia*, the following provisions:

**4.      DUTIES AFTER A LOSS**

a.      As soon as practical, the Insured shall give written notice to the Company of any loss, damage or expense, protect the property from further damage, forthwith separate the damaged and undamaged personal property, put it in the best possible order, furnish a complete inventory of the destroyed, damaged and undamaged property, showing in detail quantities, costs, actual cash value and amount of loss claimed, and refrain from demolishing damaged property until the Company has had the opportunity to inspect such damaged property;

b.      Within sixty (60) days after being requested by the Company, unless such time is extended in writing by the Company, the Insured shall render to the Company a proof of loss, signed and sworn to by the Insured, stating the knowledge and belief of the Insured as to the following:

•       the time and origin of the loss,

•       the interest of the Insured and of all others in the property,

•       the value of each item thereof, in accordance with Section **IV.12. VALUATION** of this form, and the amount of loss thereto,

•       all encumbrances thereon,

•       all other contracts of insurance, whether valid or not, covering any of said property,

•       any changes in title, use, occupation, *Location*, possession or exposures of said property since the issuing of this policy,

- by whom and for what purpose any building herein described and the several parts thereof were occupied at the time of loss whether or not it then stood on leased ground,

- The Insured shall furnish a copy of all the descriptions and schedules in all policies and, if required, verified plans and specifications of any building, fixtures or machinery destroyed or damaged.

The Insured shall, as often as may be reasonably required, exhibit to any person designated by the Company all that remains of any property herein described, and submit to examinations under oath by any person named by the Company, and subscribe the same.

The Insured shall, as often as may be reasonably required, produce for examination at the request of the Company all books of account, business records, bills, invoices and other vouchers, or certified copies thereof if originals be lost, at such reasonable time and place as may be designated by the Company or its authorized representative, and shall permit extracts and copies thereof to be made.

41.     At the time of the April 12, 2007 fire, plaintiff was directed to undertake the corrective measures to clear the debris and combustibles from the building, board up all entryways, and otherwise take steps necessary to repair the sprinkler system to operable condition as well as preserve and protect the property from further damage, as indicated in the policy provision referenced in paragraph #40 above.

42.     Plaintiff has acknowledged that it suffered loss or damage by virtue of the April 12, 2007 fire, in paragraph 4 of its Complaint.

43.     Plaintiff did not notify its broker, the Addis Group, nor notify Continental that the April 12, 2007 fire had occurred.  Nor did plaintiff notify Continental that the building was vacant, contained an inoperable sprinkler system, was not commercially occupied, all of which facts were tendered to Continental at the inception of the insurance policy.

44.    Plaintiff did not re-board up the premises, nor alert the police authorities that access into the premises on April 15 and April 16, 2007, was available, contrary to the policy provisions above.

45.    Had plaintiff notified Continental concerning these conditions, as described above, and its loss and damage from the April 12, 2007 fire, Continental would have learned of the inoperable sprinkler system, the vacant condition of the building, and otherwise taken steps to terminate or restrict coverage and further require further safeguard measures relating to the property.

46.    In light of the order of the Wilmington, Delaware Fire Marshal, plaintiffs had an obligation to preserve and protect the property by undertaking further activities to prevent further loss, in light of the history of the premises, including alternatively, a fire watch, guards, security personnel or other detective services.

47.    For all of the aforesaid reasons, plaintiffs' breached the policy of insurance by failing to notify Continental, and failing to preserve and protect the property at and after a loss from further damage or destruction, and therefore no payment is due from Continental to any plaintiff.

### THIRD AFFIRMATIVE DEFENSE

48.    Continental incorporates by reference, as if fully set forth at length, all of its averments previously and those averments subsequent hereto.

49.    The policy of insurance, upon which claim was made and suit instituted, contains the following provision:

D.    **EXCLUSIONS**

1.    **Group 1. Exclusions**

Unless otherwise provided for and limited in Section 1.4., this Policy excludes loss or damage directly or indirectly caused by or resulting from

any of the following regardless of any other cause or event, whether or not insured under this Policy, contributing concurrently or in any other sequence to the loss:

j.      Any willful or dishonest act or omission of the Insured or any associate, proprietor, partner, director, trustee, elected officer or employee, or agent of the Insured except a bailee or common carrier. This exclusion applies to ***Theft*** by the Insured's employees, but not to acts of destruction by such employees;

**In any action, suit or other proceeding where the Company alleges that by reason of the above provisions any loss or damage is not covered by this insurance, the burden of proving that such loss or damage is covered shall be upon the Insured.**

50.    From June, 2005, through the date of the fires, as mentioned above, plaintiffs willfully failed to maintain the operability of its fire protective system, which consisted of a sprinkler system. Plaintiff was required to seek an impairment permit for a minimal period of time, when an inoperable sprinkler system was not in use. Plaintiffs willfully took no steps to repair the sprinkler system, nor to seek an impairment permit from the Wilmington Fire Marshal's office, which would have allowed an inoperable sprinkler system for the time period during which repairs were made. Plaintiff has estimated a cost to repair the sprinkler pumps in an amount of from $25,000 to $50,000.

51.    As mentioned above, plaintiffs willfully failed for a two-year period of time, to clean debris and combustibles and abandoned property from the premises, plaintiffs terminated utility services at the premises as well as protective devices, and otherwise failed to maintain the property in a safe condition to avoid fires, vandalism break-ins or other such catastrophes. By virtue of all of its aforesaid actions, as averred in all of the prior Affirmative Defenses and those hereinafter, plaintiffs committed willful acts or omissions which caused the fire to Star Building on April 16, 2007, and the commensurate building damages, which would have been eliminated or minimized if plaintiffs had not abandoned the sprinkler and utility systems at the premises, or maintained the property as referenced above.

52. By virtue of its actions, there is no liability on the part of Continental to any plaintiff for any damage that occurred at the Star Building, by virtue of the April 16, 2007 fire, due to the exclusion from coverage referenced above in paragraph 49.

### FOURTH AFFIRMATIVE DEFENSE

53. Continental incorporates by reference, as if fully set forth at length, all of its averments previously stated as well as all subsequent averments.

54. In its General Conditions section, the policy contains, *inter alia*, the following provisions:

**6.    CONCEALMENT,    MISREPRESENTATION    OR FRAUD**

> This entire policy shall be void if, whether before or after a loss, the Insured has concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or the interest of the Insured therein, or in any claim, or in the case of fraud, or false swearing by the Insured relating thereto.

55. In or around January through March, 2006, plaintiff submitted a detailed application type request for potential coverage to Continental, through plaintiffs' broker, the Addis Group. Plaintiffs, in providing a list of properties owned by plaintiffs and affiliated entities, represented and averred that the Star Building was 68,000 sq. ft.; was 100% sprinklered; that its usage was commercial and that it desired loss of income coverage for the location as well as building coverage. These statements represented that the property known as the Star Building was occupied commercially with fire protection coverage.

56. At the time that coverage was sought, the Star Building was not sprinklered, was vacant, no income from rental units was being received, and the leaking structurally unsound condition of the building was not described to Continental.

57. The same conditions as were alleged by plaintiff to exist in January through March, 2007, when the instant policy went into effect on March 1, 2007.

58.     In testimony presented during the course of their examination under oath, plaintiffs acknowledged that their submissions to Continental, through their broker, did not accurately indicate the use and occupancy of the building, its condition relating to sprinkler system coverage, nor whether or not loss of income coverage should be afforded, since customary operations were not being conducted.

59.     The occupancy of the building, as well as the condition of the sprinkler system and the other conditions of the structure, as referenced above, were material facts and circumstances concerning the insurance, the subject thereof, and relevant to Continental's decision to issue the policy of insurance, in the form and for the premium it did.   Had Continental known the true state of facts concerning the broken sprinkler system, the vacancy of the premises, the fact that no income was earned by plaintiffs, that it was frequently broken into, it would not have issued the policy it did, on the terms that it did and for the premium charged.

60.     Plaintiffs took no steps to accurately update the occupancy, condition, use and protective safeguards at the various buildings insured prior to the April 16, 2007 fire.

61.     Based upon the aforesaid actions or inactions of the insured, in either misrepresenting, or concealing from Continental, the aforesaid conditions at the Star Building, the policy is void, and of no effect, and plaintiffs are not entitled to compensation under and pursuant to the policy of insurance, by virtue of the April 16, 2007 fire.

62.     The information submitted to Continental was false, material to the risk insured and had correct information been known, Continental would not have issued the policy of insurance it did as it relates to the Star Building.

63.     Even if the information submitted to Continental, as referred to above in paragraphs 55 through 62, was not intended as false or with the intent to deceive, or with reckless disregard to its truth of falsity, no coverage is owed to plaintiffs since the information

not disclosed was material to the risk and hazard assumed and Continental would not have issued the policy it did for the same premiums charged and conditions existent, if the true facts had been made known, and plaintiffs violated an obligation to inform Continental of the true condition of the premises, as the facts known were required to be disclosed, in light of their importance to the risk insured.

## FIFTH AFFIRMATIVE DEFENSE

64.     Continental incorporates by reference as if fully set forth at length all of its prior and subsequent averments.

65.     The policy of insurance contains, *inter alia*, the following provisions:

### III.     GENERAL CONDITIONS

### 2.     ACCESS TO BOOKS AND RECORDS

It is agreed that the Company, or its authority representatives, shall at all reasonable times, have access to and the right to review the books and records of the Insured for the purposes of conducting an audit or determining any facts relating to this insurance or a claim. With regard to any such review or access, the Insured shall provide, at the Insured's expense, adequate private working area and facilities and staff, adequate copying and telephone facilities.

### IV.     LOSS CONDITIONS

### 2.     ASSISTANCE AND COOPERATION OF THE INSURED

The insured shall cooperate with the company and upon the company's request shall attend hearings and trials and shall assist in effecting settlements, in securing and giving evidence, in obtaining the attendance of witnesses, and in conducting suits.

66.     During the course of its investigation, Continental requested plaintiffs to provide documents relevant and material to plaintiffs' claim that at the time of the fire, the building was leased and therefore not vacant.

67.    Among the documents requested were tenant files for entities that had leased the premises, separate and distinct from VIP or Tirec.  No such documents were provided.

68.    Additionally, Continental requested true and correct copies of any and all emails by and between plaintiffs and their broker, Addis Group, subsequent to the fire relating to the Star Building fire occupancy and claim.  Continental received no such emails.

69.    Additionally, Continental requested a copy of documents submitted to plaintiffs from Addis, including proposals for insurance, documents possessed by plaintiffs' risk manager relating to insurance coverage, particularly coverage afforded under the policy of insurance that went into effect subsequent to Continental's non-renewal, as well as Pettinaro Enterprises, LLC policies of insurance insuring vacant properties.  Continental received no such documents.

70.    Continental also requested any documents relating the valuation of the Star Building, particularly documents reflecting any financial analysis or the amount of money it would take to repair, renovate or bring the Star Building up to code, as well as any documents reflecting maintenance or repair expenditures on the Star Building prior to the fire.  Continental received no such documents.

71.    In light of plaintiffs' failure to produce the information and documentation requested, plaintiffs have breached the policy provision referred to in Paragraph 65 above and are not entitled to any policy proceeds, as such breach amounts to a breach of a condition precedent to liability on the part of Continental.

72.    The failure to produce the information and documents requested also amounts to a breach of the Duties After Loss provision, in the Loss Condition section of the policy, as referred to in Paragraphs 40 above, and the provisions in Paragraph 65 above from the General Conditions, which failures amount to a breach of the policy of insurance, and a finding of no liability on the part of Continental to any plaintiff.

## SIXTH AFFIRMATIVE DEFENSE

73.     Continental incorporates by reference, as if fully set forth at length, all of its prior and subsequent averments.

74.     During the course of its investigation into the fire, Continental supplied plaintiffs with a blank sworn statement in proof of loss for execution.

75.     Plaintiffs filed, under oath, the sworn statement in proof of loss which alleged, in terms of the occupancy of the Star Building on the day of the fire, that it was "leased for storage business to VIP Storage, Inc., 31,140 plus, minus square feet, 45% of the building."

76.     On the sworn statement in proof of loss, plaintiffs represented and averred that at the time of the fire, the property was being leased, when, in fact, VIP Storage had ceased operations two years before, and no utility service was rendered to the building, and it did so with the intent to convince Continental that the vacancy provision of the policy of insurance would not apply.

77.     The averments, representations and statements concerning the occupancy of the building at the time of the fire, as included in the sworn statement in proof of loss, were false, misrepresentations or concealments of the true state of affairs, and a violation of the concealment, misrepresentation and fraud provision referenced in Paragraph 54 above.

78.     Based upon these misrepresentations and concealments, the plaintiffs breached the policy of insurance, rendering it void, and therefore, no obligation exists on the part of Continental to make payment to any plaintiff.

## SEVENTH AFFIRMATIVE DEFENSE

79.     Continental incorporates by reference, as if fully set forth at length, all of its previous and subsequent averments.

80.     The policy of insurance contains, inter alia, the following provision:

**12.     VALUATION**

> In the event of physical loss or damage not excluded, the value of property insured shall be determined as follows, **but for no more than the interest of the Insured…:**

81.     Pettinaro Enterprises, LLC, Star Building, LLC and Kathryn Pettinaro had no interest in the Star Building at the time of the April 16, 2007 fire.

82.     Pettinaro Enterprises, LLC, Star Building, LLC and Kathryn Pettinaro did not make claim against, nor file a Sworn Statement in Proof of Loss with Continental Casualty Company seeking payment for the fire of April 16, 2007, and therefore, they have no claim or cause of action upon which relief can be granted to them by virtue of the April 16, 2007 fire.

### EIGHTH AFFIRMATIVE DEFENSE

83.     Continental incorporates by reference as if fully set forth at length, all of its prior and subsequent averments.

84.     At the time of the April 16, 2007 fire, only Verino Pettinaro was the deeded owner of the Star Building located at 123 South Justison Street, Wilmington, Delaware.

85.     Verino Pettinaro filed with Continental a Sworn Statement in Proof of Loss, wherein he claimed that the Star Building was wholly owned by Verino and Kathryn Pettinaro.

86.     The deed to the aforesaid property reflects only Verino Pettinaro as the owner at the time of the April 16, 2007 fire.

87.     Since Pettinaro Enterprises, LLC, Star Building, LLC and Kathryn Pettinaro had no separately insured interest in the Star Building, they lack standing to institute suit or to make a claim for any policy proceeds, separate and distinct from the claim submitted by Verino Pettinaro.

88.     In light of the fact that Pettinaro Enterprises, LLC, Star Building, LLC and Kathryn Pettinaro had no insurable interest in the Star Building at the time of the fire, they therefore lack standing to sue Continental for any policy proceeds by virtue of the April 16, 2007 fire.

## NINTH AFFIRMATIVE DEFENSE

89.     Continental incorporates by reference as if fully set forth at length all of its prior and subsequent averments.

90.     Plaintiffs' complaint fails to state a claim upon which relief can be granted to any plaintiff.

## TENTH AFFIRMATIVE DEFENSE

91.     Continental incorporates by reference, as if fully set forth at length, all of its previous and subsequent averments.

92.     During the course of Continental's investigation into the fire and claim, plaintiffs Verino Pettinaro submitted a Sworn Statement in Proof of Loss, seeking coverage in the approximate amount of $3,611,225.50, by virtue of the April 16, 2007 fire.

93.     The amount claimed, was based upon the alleged replacement cost valuation and loss of income valuation placed upon the Star Building by plaintiffs, in the applications/ submissions to Continental, prior to the effective date of the policy.

94.     At the time of the fire, plaintiffs, through affiliated entities, had commissioned the rendering of architectural drawings for a new office and parking structure to be erected, after demolition of a substantial portion of the Star Building.   Plaintiffs retained the services of engineers, architects, and, using its own staff as well, had begun the planning process for the demolition of the Star Building and the erection of a new office building and parking facility. Plaintiffs also retained the services of experts to assist in presentations to the Wilmington Design Review and Planning Commission, in order to seek approval for a demolition permit, and the erection of a six-story office building structure.

95.     These activities were taking place from late 2006 through April 16, 2007.

96.     At this time, there was no specific repair, reconstruction, or structural work being conducted at the Star Building.

97.    The policy of insurance contains, *inter alia*, the following provision:

**25.    PROPERTY IN THE COURSE OF CONSTRUCTION**

> This policy includes, subject to the sublimit specified in Section **1.4.** of this policy, automatic coverage for that property described in **II.A.1.** which is in the course of construction, installation, erection, start-up, commissioning, reconstruction, repairs, demolition, alteration, renovation and the like at *__Locations__* insured hereunder, provided always such property is not covered under any other policy. This policy also insures against loss resulting from necessary interruption of business due to damage to or destruction of such property, by the perils insured against. The extent to which a delay in the commencement of business operations of the Insured and the length of time for which liability exists under this policy shall be determined as otherwise provided herein, but such determined length of time shall be applied to the experience of the business after the business has reached its planned level of production or level of business operations. Neither period of time mentioned above is limited by the date of expiration named in this policy.

98.    At the time of the April 16, 2007 fire, upon information and belief, plaintiffs had begun the commissioning and start-up process referred to in the immediately preceding paragraph. If it is determined, which Continental specifically denies, that the aforesaid limitations, and exclusions or breach of conditions or requirements in case of loss, do not bar plaintiffs' claim, alternatively, plaintiffs are limited in coverage to $100,000 for buildings in the course of construction, as defined by the policy of insurance.

## ELEVENTH AFFIRMATIVE DEFENSE

99.    Continental incorporates by reference, as if fully set forth at length, all of its previous and subsequent averments.

100.    During the course of the claim, Verino Pettinaro made claim for $3,611,225.50, the value of the replacement cost of the building as well as loss of income, as indicated on plaintiffs' application/submission to Continental.

101.   Subsequent to the fire, Continental determined that portions of the structure were suitable to be used in any reconstruction of the structure as it existed at the time of the April 16, 2007 fire.

102.   Subsequent to the fire, Continental commissioned an appraisal of the building and land, as of the date of the fire.  As of April 16, 2007, the market value of the building was considered to be $750,000 with the assumption that the building was in good physical condition. The building, as referenced below, was in extremely poor physical condition.

103.   Plaintiffs have not rebuilt the Star Building, as it existed at the time of the fire, nor did plaintiffs preserve the walls of the structure, which could have been utilized in any rebuilding process.

104.   If any liability is found to exist, which liability Continental strictly denies, and if none of the aforesaid exclusions, limitations, breaches of the requirements in case of loss or provisions relating to Commissioning and start-up are found to apply, the actual cash value of the structure is the measure of value of any obligation of Continental, which obligation Continental specifically denies.

105.   Under the policy of insurance, the actual cash value is the replacement cost with deduction for depreciation, deterioration and obsolescence using material of like kind and quality, performing the same function and purpose.  Measured in those terms, the value of the Star Building at the time of the fire is substantially below the amount for which the plaintiffs have made claim.

## TWELFTH AFFIRMATIVE DEFENSE

106.   Continental incorporates by reference, as if fully set forth at length, all of its previous and subsequent averments.

21

107.    Plaintiffs are not entitled to their requested replacement cost coverage, in the amount of $3.5 million dollars, since the building was not repaired or replaced within one-year from the date of loss, in accordance with the following valuation provision:

K.      All other property at the least of:

(1)     The cost to repair;

(2)     The replacement cost with property of like, kind and quality, and performing the same function or purpose;

(3)     The actual expenditure incurred in repairing or replacing damaged property;

However, if within one (1) year the process of repair, rebuilding or replacement in accordance with the provisions of this section (Section IV.12), has not begun then the value of the property will be actual cash value.

108.    Plaintiff has not repaired or replaced the structure with a building of like, kind and quality, for the same purpose or function, nor begun rebuilding within one year.  It is entitled to at most the actual value of the property, as referenced immediately above, if any liability is found to exist on the part of Continental, which liability is strictly denied.

109.    Continental also avers that it is entitled to rely upon the policy deductible and a credit for any salvage lost by virtue of the demolition of the building in determining the actual cash value.

WHEREFORE, Continental requests that Plaintiffs' Complaint be dismissed, that a judgment be entered on its behalf, and that it be awarded all of its expenses and costs, including attorneys' fees and expenditures.


Dated:  March 11, 2009

Joseph J. Bellew (No. 4816)
Cozen O'Connor
1201 N. Market Street, Suite 1400
Wilmington, DE 19801
Telephone:  (302) 295-2000
Facsimile:  (302) 295-2013

*Attorneys for Defendant, Continental Casualty Company*


*Of Counsel*:
Michael F. Henry, Esq.
Cozen O'Connor
1900 Market Street
Philadelphia, PA 19103
Telephone:  (215) 665-2050