IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

PETTINARO ENTERPRISES, LLC;            )
VERINO AND KATHRYN PETTINARO;          )
and STAR BUILDING, LLC,                )
                                       )
            Plaintiffs,                )
                                       )
    v.                                 )     C.A. No. 09-139-GMS
                                       )
CONTINENTAL CASUALTY                   )
COMPANY,                               )
                                       )
            Defendant.                 )
_____)

## MEMORANDUM

## I. INTRODUCTION

On January 29, 2009, Pettinaro Enterprises, LLC, Verino and Kathryn Pettinaro, and Star

Building, LLC (collectively, the "plaintiffs") filed an action against defendant Continental

Casualty Company (the "defendant") in the Superior Court of the State of Delaware for breach of

contract and declaratory judgment based on the defendant's denial of an insurance coverage

claim involving the plaintiffs' property insurance policy. (D.I. 1, Ex. A.)  The action was

removed to this court on March 4, 2009 pursuant to 28 U.S.C. §§ 1332, 1441 and 1446.

Presently before the court are the defendant's motion for summary judgment and the plaintiffs'

motion for partial summary judgment.  (D.I. 88, 90.)  For the reasons that follow, the court will

grant the defendant's motion for summary judgment based on material misrepresentations in the

plaintiffs' proof of loss.  Because the material misrepresentations void the policy, the court's

decision to grant the defendant's motion for summary judgment eliminates the plaintiffs' claims

and results in a dismissal of the case. The court denies the plaintiffs' motion for partial summary judgment as moot.

## II. BACKGROUND

The plaintiffs filed their complaint on January 29, 2009, alleging that the defendant wrongfully denied the plaintiffs' insurance claim for property damage resulting from two fires that occurred at 123 South Justison Street, Wilmington, Delaware 19801 (the "Property") on April 12 and April 16, 2007. (D.I. 1, Ex. A at ¶¶ 4-8.) The following facts are undisputed unless otherwise noted.

### A. The Commercial Leases

The plaintiffs leased the Property to two commercial tenants, VIP Storage of Delaware, Inc. ("VIP") and Tirec Corporation ("Tirec").[1] (D.I. 93 at 3.) In a letter dated January 29, 2004, the plaintiffs informed VIP that its lease would terminate on March 31, 2004, but VIP remained in possession of the premises as a holdover tenant after the lease termination date. (D.I. 94, Ex. 12.) On May 6, 2005, the plaintiffs sent another letter notifying VIP that it had thirty days to vacate the Property and threatening to commence a summary possession and/or debt action against VIP. (Id., Ex. 14.) VIP informed the plaintiffs that it would leave the Property by June 9, 2005 and indicated that most of the storage areas would not be cleared out. (Id., Ex. 10.) VIP abandoned the Property and surrendered the keys to the plaintiffs on or about June 28, 2005, and the plaintiffs' operations manager prepared a final inspection report indicating that the tenants had vacated the property. (D.I. 93 at 3; D.I. 89 at 6.) The plaintiffs subsequently discovered an

---

[1] Tirec terminated its operations and vacated the Property in June of 2005. (D.I. 93 at 3.) The parties do not dispute the fact that Tirec did not maintain a tenancy of any kind on the date of the fire.

estimated 300 tons of discarded items remaining at the Property. (Id.) On or about September 8, 2006, the plaintiffs wrote off VIP's rent arrearages in the amount of $88,681.69 in addition to clean up costs. (D.I. 94, Ex. B.)

### B. The Insurance Policy

In 2001, the Addis Group became the broker for the plaintiffs' property insurance and created a spreadsheet to describe the insured properties. (D.I. 93 at 1.) The spreadsheet included construction, occupancy, protection and exposure ("COPE") data, five years of loss runs for all prior claims, and the plaintiffs' property specifications for coverage. (D.I. 89 at 1.) The spreadsheet indicated that the Property was built in 1949, was 100% sprinklered, was occupied by commercial tenants, and had a loss of income extra-expense exposure and building exposure. (Id. at 1-2.)

In February of 2006, Ingrid Abell ("Abell"), an employee of the Addis Group, supplied this information to the defendant's underwriter, Gordon Avron ("Avron"), for purposes of calculating a quote for property insurance and builders' risk coverage for the plaintiffs, with premiums based on the replacement cost values of the Property. (Id.; D.I. 91 at 3.) On February 23, 2006, Abell accepted the defendant's premium quotation on behalf of the plaintiffs, and Avron issued a binder which indicated different rates for different types of occupancies. (D.I. 89 at 2.) The defendant issued the plaintiffs an insurance policy on March 1, 2006 for total property insurance values of $297,459,527. (Id.) The defendant renewed the policy in March of 2007, based on the same information and with the exact terms and conditions as the prior policy. (Id.)

3

### C. The Fires

On April 12, 2007, a fire occurred at the Property. (D.I. 89 at 2.) The Wilmington Fire Marshal's Office ("WFMO") investigation determined that the sprinkler system was not operational, the building contained combustibles, and openings from the building to the exterior existed. (D.I. 118, Ex. G.) The WFMO issued a violation requiring the plaintiffs to apply for a sprinkler impairment permit, fix the sprinkler, remove all combustibles and board up the openings, but the plaintiffs' safety director responded that the Property was structurally unsafe and it would be too risky for employees to enter to remove combustibles. (Id., Ex. P.) The plaintiffs did not notify the defendant about the fire that occurred on April 12, 2007. (D.I. 94, Ex. 26.)

On April 16, 2007, a second fire occurred at the Property, resulting in a total loss. (D.I. 91 at 3.) The WFMO and the Bureau of Alcohol, Tobacco & Firearms ("ATF") investigated the cause of the fire. (Id.) Louis Gahagan ("Gahagan"), a private investigator hired by the defendant, also participated in the investigation. (Id. at 4.) The WFMO, ATF and Gahagan each submitted a report at the conclusion of the investigation describing the fire as incendiary. (Id. at 5-6.) During the course of the investigation, the defendant learned that the Property was vacant, it did not have a working sprinkler system, a previous fire had occurred on April 12, 2007, and an engineering report commissioned by the plaintiffs in October 2006 concluded that the Property was structurally unsound. (D.I. 94, Ex. 26.)

The plaintiffs submitted a proof of loss to the defendant on September 10, 2007, claiming $3,604,000 for the replacement cost of the building and a loss of rent in the amount of $37,800. (D.I. 89, Ex. 11.) The claim for loss of rent was based on the plaintiffs' allegation that at the

4

time of the loss, 45% of the building was "leased for storage business to V.I.P. Storage, Inc."
(Id.) The proof of loss was prepared by the plaintiffs' risk manager, David Crowley ("Crowley"),
who stated that he believed VIP continued to maintain a holdover tenancy because the abandoned
items from VIP's tenancy remained at the Property. (D.I. 93 at 5.) In a September 3, 2008 letter
to the plaintiffs, the defendant rejected the plaintiffs' claim based upon the exclusion from
coverage for damages caused by arson or vandalism to a vacant property, misrepresentations in
the spreadsheet, misrepresentations in the proof of loss, failure to preserve the property and for
willful acts or omissions causing damages. (D.I. 89 at 4.)

## III. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) provides that a court shall grant summary judgment
"if the pleadings, depositions, answers to interrogatories, and admissions on file, together with
the affidavits, if any, show that there is no genuine issue as to any material fact and that the
moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary
judgment under Rule 56 is appropriate only when the court, viewing the record as a whole and
drawing reasonable inferences in the light most favorable to the nonmoving party, determines
that the Rule 56(c) standard has been met. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24
(1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986); *Boyle v. County of
Allegheny*, 139 F.3d 386, 392 (3d Cir. 1998).

To defeat a motion for summary judgment, the nonmoving party must "do more than
simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec.
Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also Podobnik v. U.S.
Postal Service*, 409 F.3d 584, 594 (3d Cir. 2005) (nonmoving party "must present more than just

5

bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue")
(internal quotations omitted).  A factual dispute is genuine only if "the evidence is such that a
reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 247-48.
"If the evidence is merely colorable, or is not significantly probative, summary judgment may be
granted." *Id.* at 249-50 (internal citations omitted).

## IV.  DISCUSSION

In support of its motion for summary judgment, the defendant contends that the plaintiffs
violated the concealment, fraud and misrepresentation clause of the insurance policy, which
states, "This entire policy shall be void if, whether before or after a loss, the Insured has
concealed or misrepresented any material fact or circumstance concerning this insurance or the
subject thereof, or the interest of the Insured therein, or in any claim, or in the case of fraud, or
false swearing by the Insured relating thereto." (D.I. 118, Ex. A at 33.)  Specifically, the
defendant contends that the plaintiffs cannot claim actual damages for a loss of rental income
from VIP when VIP vacated the Property and stopped paying rent approximately two years prior
to the fire. (D.I. 89 at 5.)

In response, the plaintiffs contend that questions of material fact exist regarding the
plaintiffs' knowledge and belief in asserting the claim for loss of rental income.  Specifically, the
plaintiffs contend that Crowley believed the Property continued to be occupied by VIP as a
holdover tenant and rent continued to accrue at the time Crowley submitted the proof of loss.
(D.I. 93 at 7-8.)  Even if the court concludes that the plaintiffs knowingly made
misrepresentations in the proof of loss, the plaintiffs contend that the alleged misrepresentations
were not material because the defendant sought to show that the building was vacant well before

the proof of loss was submitted, and therefore, any misrepresentations that may have been made did not alter the defendant's investigation. (Id. at 11-12.)

To prevail on an affirmative defense for the misrepresentation of a material fact under Delaware law, the defendant must prove that (1) a misrepresentation was made; (2) which the plaintiffs knew was false; and (3) the misrepresentation was material. *See Dickson-Witmer v. Union Bankers Ins. Co.*, C.A. No. 92C-07-107, 1994 WL 164554 (Del. Super. Apr. 27, 1994). "Misrepresentation is a question of fact when there is conflicting evidence and a question of law when the evidence is only reasonably susceptible to one interpretation." *Smith v. Keystone Ins. Co.*, C.A. No. 03C-06-037-WLW, 2005 WL 791387, at *2 (Del. Super. Mar. 22, 2005). The parties do not dispute the fact that the plaintiffs made false statements in their proof of loss. Rather, the parties' arguments center on the plaintiffs' state of mind in submitting the proof of loss and the materiality of any misrepresentations made therein. Therefore, the court concludes that no genuine issue of material fact exists regarding whether the plaintiffs made misrepresentations in the proof of loss by claiming actual damages for loss of rental income.

## A. Knowledge and Belief

The court concludes that no genuine issue of material fact exists regarding whether the plaintiffs knowingly made misrepresentations in the proof of loss by claiming actual damages for loss of rental income. In the context of insurance coverage, language referencing the insured's "knowledge and belief"[2] shifts the focus of the inquiry from "whether the facts asserted were true

---

[2]The insurance policy in the instant case requires an insured to render a proof of loss "signed and sworn to by the Insured, stating the knowledge and belief of the Insured as to . . . by whom and for what purpose any building herein described and the several parts thereof were occupied at the time of loss . . .." (D.I. 118, Ex. A at 38-39.)

to whether, on the basis of what he knew, the applicant believed them to be true." *Principal Life Ins. Co. v. Lawrence Rucker 2007 Ins. Trust*, C.A. No. 08-488-MPT, ---- F. Supp. 2d ----, 2010 WL 3395661, at *7 (D. Del. Aug. 30, 2010) (quoting *Dickson-Witmer*, 1994 WL 164554, at *4). The court acknowledges that the Third Circuit generally considers questions regarding an insured's state of mind to be issues of fact for the jury. *See Justofin v. Metropolitan Life Ins. Co.*, 372 F.3d 517, 523-24 (3d Cir. 2004). "The issue of intent is 'particularly inappropriate for resolution by summary judgment' because evaluating state of mind often requires the drawing of inferences from the conduct of parties about which reasonable persons might differ." *Id.* (quoting *Riehl v. Travelers Ins. Co.*, 772 F.2d 19, 24 (3d Cir. 1985)). However, the court concludes that the evidence in the instant case is susceptible to only one reasonable interpretation, and no reasonable jury could find that the plaintiffs were unaware of the misrepresentations made in the proof of loss based on the evidence presented.

The undisputed evidence in the case at bar demonstrates that VIP vacated the Property well before the date of the fire. The insurance policy defines a property as "vacant":

unless at least 31% of [the Property's] total square footage is:

(i) Rented to a lessee or sub-lessee and used by the lessee or sub-lessee to conduct its customary operations; and/or
(ii) Used by the building owner to conduct customary operations.

(D.I. 118, Ex. A at 41.) Correspondence written on behalf of the plaintiffs shows that VIP was notified of its lease termination as well as the termination of the month to month tenancy and advises VIP of the plaintiffs' right to "commence summary possession and/or debt action as permitted by the laws of the State of Delaware." (D.I. 94, Ex. 12, 14.) These letters demonstrate the plaintiffs' intent to exercise their rights to reclaim the premises and terminate any holdover

tenancy that existed after the lease expiration date. Moreover, the plaintiffs' records and email correspondence confirm that VIP physically turned over the premises by terminating operations and returning the keys. (D.I. 118, Ex. M, N.) In a document entitled "Rental Space Status Report - Security Deposit," the plaintiffs note that VIP vacated on June 27, 2005, and a VIP employee named Elizabeth returned the keys to the plaintiffs. (Id., Ex. M.) In July 2005, the plaintiffs' operations manager, Richard Pittaccio ("Pittaccio"), discouraged inspectors from entering the Property, explaining that the Property "is totally shut down - all tenants have vacated the building as of June 2005" and describing the building as "a death trap and an accident waiting to happen." (Id., Ex. N.) This evidence supports the court's conclusion that the plaintiffs knew no commercial tenant could use the Property immediately prior to the fires "to conduct its customary operations" as required under the insurance policy. (Id., Ex. A at 41.)

The status of VIP's rental payments, as reflected by the plaintiffs' own records, also indicates that the plaintiffs were well aware of the fact that no tenancy of any kind existed at the time the fires occurred. The plaintiffs did not collect any rent from VIP after November 2004, before the insurance policy was issued, and the plaintiffs stopped charging monthly rent and holdover rent to VIP by July 2005. (D.I. 94, Ex. 13; D.I. 97, Ex. 1.) In September 2006, the plaintiffs wrote off $88,681.69 in rent arrearages, indicating that the plaintiffs believed the rent arrearages to be uncollectible. (D.I. 94, Ex. 13.) At the same time, the plaintiffs wrote off over $36,000 in cleanup costs[3] that had been charged to VIP in July 2005, days after VIP vacated the

---

[3]The court notes that cleanup costs are generally incurred after a tenant has abandoned the tenancy, not during a holdover tenancy. *See Sesko v. McConkey*, 2005 WL 762515, at *1 (Wash. App. Div. 2 Apr. 5, 2005) (landlord incurred cleanup costs by paying someone to remove tenant's remaining possessions after tenant's ouster); *Mason v. Schumacher*, 439 N.W.2d 61, 70 (Neb. 1989) (reimbursing landlord for expenses incurred in removing tenant's belongings after

Property. (Id.) The plaintiffs' occupant ledgers, dated November 7, 2006, list VIP's occupant

type as "former" and describe the tenancy as "vacated" and "closed." (D.I. 94, Ex. 13; D.I. 97,

Ex. 1.) Thus, the plaintiffs' own records demonstrate that the plaintiffs did not believe a tenancy

existed.

The deposition testimony of several of the plaintiffs' employees further demonstrates the

plaintiffs' knowledge that the Property was vacant at the time of the fire. Specifically, Pittaccio

testified that he prepared the final inspection report dated June 27, 2005 in which he reported that

VIP vacated the Property on that date. (D.I. 89, Ex. 8 at 166:1 - 167:8.) Pittaccio also testified

that the sprinkler system was broken, the roof leaked and the building had no working utilities.

(Id. at 96:2 - 97:16.) Former general counsel Garth Heald testified that he sent letters to Tirec

and VIP on behalf of the plaintiffs regarding the termination of their leases and took no legal

action to remove discarded items that remained at the Property before the fires occurred. (Id.,

Ex. 10 at 41:23-25, 48:4 - 50:9.) Maintenance superintendent Jay Montgomery testified that

signs were posted at the Property advising VIP's clients to remove their goods within six months

of the termination of the tenancy. (Id., Ex. 14 at 42:10 - 43:22.) Moreover, property manager

Patricia Cox testified that she was advised not to enter the Property because it was too dangerous.

(Id., Ex. 15 at 47:18 - 48:14.)

In light of this overwhelming evidence, the court concludes that the plaintiffs' efforts to

demonstrate the existence of a genuine issue of material fact by referencing statements made by

Crowley and Verino Pettinaro after the initiation of the litigation are without merit. During their

---

tenant's abandonment because removal was necessary for landlord's fulfillment of statutory duty
to relet premises).

depositions, Crowley and Verino Pettinaro claimed to believe that the mere presence of 300 tons

of items belonging to VIP was sufficient to constitute a holdover tenancy due to the alleged

ongoing operations of VIP's storage business. (Id., Ex. 16 at 231:7 - 235:16; Ex. 17 at 179:13 -

183:14.) Both Crowley, the plaintiffs' risk manager who submitted the proof of loss, and

plaintiff Verino Pettinaro, the owner of the Property and a signatory of the proof of loss, claimed

that they had no knowledge of correspondence regarding the termination of VIP's lease or the

lack of rental income received from the Property during the three years prior to the fire. (Id.)

The court concludes that no reasonable jury could find that Crowley and Verino Pettinaro,

who are sophisticated parties in the commercial real estate business, believed that a holdover

tenancy existed due to the presence of items abandoned by VIP and had no knowledge of their

own business records and correspondence regarding the status of the Property. The court further

concludes that the plaintiffs' representations in the proof of loss regarding the Property's

occupation by a commercial tenant and the claim for $37,800 in lost rental income are material

misrepresentations. Because the evidence demonstrates that the plaintiffs knew the Property was

vacant on the date of the fire, the plaintiffs are not entitled to claim actual damages for loss of

rental income[4] under the terms of the policy, which provides that "recovery in the event of loss

hereunder shall be the actual loss sustained by the Insured resulting directly from necessary

untenability of insured premises, resulting directly from an insured loss." (D.I. 118, Ex. A at 23.)

---

[4]The court observes that pursuing a claim for lost rental income at a time when the
landlord has no tenants may constitute fraud and bar the entire claim. *Certain Underwriters at
Lloyd's of London v. Corporate Pines Realty Corp.*, (S.D. Tex. Dec. 15, 2008) (barring lost rent
income claim because the premises was not occupied by a tenant at the time the claim was filed).

## B. Materiality

The court concludes that no genuine issue of material fact exists regarding the materiality of the plaintiffs' misrepresentations in the proof of loss. "[A] misrepresentation will be considered material if a reasonable insurance company, in determining its course of action, would attach importance to the facts misrepresented." *Long v. Ins. Co. N. Am.*, 670 F.2d 930, 934 (10th Cir. 1982) (citing Restatement (Second) of Torts, § 538(2)(a)). The materiality of a misrepresentation may be decided as a matter of law if reasonable minds cannot differ on the question. *See Smith*, 2005 WL 791387, at *2; *Gould v. American-Hawaiian S.S. Co.*, 535 F.2d 761, 771 (3d Cir. 1976). The plaintiffs' claim that Crowley and Verino Pettinaro believed that the Property was not vacant and that the plaintiffs suffered a loss of rental income as a result of the fire are clearly misrepresentations that would substantially affect the defendant's defense of the insurance claim. The court concludes that no reasonable jury could find that the plaintiffs' claim for lost rental income for the vacant Property was immaterial to the defendant's assessment of the insurance claim.

The court concludes that the defendant's motion for summary judgment should be granted due to material misrepresentations made in the plaintiffs' proof of loss. Consequently, the insurance policy is void under the concealment, misrepresentation or fraud clause of the policy. Because the plaintiffs' material misrepresentations void the policy, the court's decision to grant the defendant's motion for summary judgment eliminates the plaintiffs' claims and results in a dismissal of the case. Therefore, the court does not reach the remaining arguments presented in the defendant's motion for summary judgment and the plaintiffs' motion for partial summary judgment.

## V.  CONCLUSION

For the reasons stated above, the defendant's motion for summary judgment (D.I. 88) is granted, and judgment is entered in favor of the defendant and against the plaintiffs.  The plaintiffs' motion for partial summary judgment (D.I. 90) is denied as moot.  An appropriate order shall issue.

Dated: December /0 , 2010

CHIEF, UNITED STATES DISTRICT JUDGE

13

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

PETTINARO ENTERPRISES, LLC;          )
VERINO AND KATHRYN PETTINARO;  )
and STAR BUILDING, LLC,                    )
                                                         )
                    Plaintiffs,                       )
                                                         )
            v.                                           )           C.A. No. 09-139-GMS
                                                         )
CONTINENTAL CASUALTY                    )
COMPANY,                                        )
                                                         )
                    Defendant.                      )
                                                         )

## ORDER

For the reasons stated in the court's Memorandum of this same date, IT IS HEREBY

ORDERED that:

1. The defendant's motion for summary judgment (D.I. 88) is GRANTED.

2. The plaintiffs' motion for partial summary judgment (D.I. 90) is DENIED as moot.

3. Judgment is entered in favor of the defendant and against the plaintiffs.

Dated: December 10, 2010

CHIEF, UNITED STATES DISTRICT JUDGE